A Condemnation Proceeding In Rem by Redevelopment Authority of the City of Philadelphia for the Purpose of Redevelopment of Washington Square Redevelopment Area, Washington Square West Urban Renewal Area, Unit No. 2, Philadelphia, Including Certain Land Improvements and Properties. Asco Parking Corp., Appellant.

550

Argued April 5, 1976, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Henry A. Stein,* with him, of counsel, *Mesirov, Gel-
man, Jaffe & Cramer,* for appellant.

*Donald Strumpf,* with him *Peter A Galante,* for ap-
pellee.

OPINION BY JUDGE WILKINSON, May 20, 1976:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County, entered pursuant to Section 407(a) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, *as amended*, 26 P. S. §1-407(a), which decreed that a writ of possession issue for premises occupied by appellant. We affirm.

On April 1, 1969, the Redevelopment Authority of the City of Philadelphia (Authority) filed a declaration of taking, condemning property which included premises located at 1125-37 Locust Street, Philadelphia. These premises were leased and operated by appellant as a multi-level parking garage. Despite the condemnation, appellant continued its possession and operation of the premises as a parking facility. In October, 1971, appellant, as tenant, and the Authority, as landlord, entered into a written lease agreement.[1]

However, by a writing dated April 9, 1974, captioned "NOTICE TO VACATE", the Authority gave appellant 90 days to surrender possession of the premises. Appellant refused and the Authority filed a petition with the lower court for a writ of possession under Section 407(a) of the Eminent Domain Code, 26 P. S. §1-407(a). Following the granting of a rule upon appellant to show cause why the writ should not issue, the filing of an answer to the petition by appellant, and the holding of evidentiary hearings, the court, on June 20, 1974, ordered the writ to issue. Appellant is now before this Court on appeal from that order.

First, appellant contends that the Authority is not entitled to a writ of possession since its relocation assistance program fails to satisfy the minimum requirements

---

1. Although the lease is not part of the record, the notes of testimony and the briefs appear to indicate that the tenancy was month-to-month. The term was indefinite; however, rent was fixed at $1,000.00 per month and the tenancy terminable by either party upon written notice of at least 30 days.

of Section 205 of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Relocation Act), 42 U.S.C. §4625, and the regulations promulgated thereunder.[2] The court below refused to accept this argument, holding that appellant failed to demonstrate in what respects the Authority's relocation program does not comply with the Relocation Act. We must agree with the lower court.

---

2. Since the Locust Street premises are part of a redevelopment project receiving federal funding, the Authority is obligated to provide relocation assistance to displacees consistent with Section 205. Section 210 of the Relocation Act, 42 U.S.C. §4630.

Specifically, Section 205(c), 42 U.S.C. §4625(c), provides, in relevant part:

"Each relocation assistance advisory program required by subsection (a) of this section shall include such measures, facilities, or services as may be necessary or appropriate in order to—

"(1) determine the need, if any, of displaced persons, for relocation assistance;

"(2) provide current and continuing information on the availability, prices, and rentals, of comparable decent, safe, and sanitary sales and rental housing, and of comparable commercial properties and locations for displaced businesses;

. . . .

"(4) assist a displaced person displaced from his business or farm operation in obtaining and becoming established in a suitable replacement location;

"(5) supply information concerning Federal and State housing programs, disaster loan programs, and other Federal or State programs offering assistance to displaced persons; and

"(6) provide other advisory services to displaced persons in order to minimize hardships to such persons in adjusting to relocation."

The regulations under Section 205 state:

"Each relocation assistance advisory program undertaken pursuant to §42.105 shall include, at a minimum, such measures, facilities or services as may be necessary or appropriate in order to:

"(a) Fully inform eligible persons under this Subpart at the earliest possible date as to the availability of relocation

To support its contention, appellant relies on testimony, elicited under its cross-examination of the Authority's commercial and industrial relocation specialist, that the Authority, through the invited cooperation of Philadelphia real estate brokers, maintains listings for properties available to displaced businesses.[3] Appellant concludes that this testimony establishes that the Authority's relocation program consists *"solely* of 'inviting listings' from area realtors," thus falling short of the Relocation Act requirements. This is an unwarranted conclusion.

---

payments and assistance and the eligibility requirements therefor, as well as the procedures for obtaining such payments and assistance;

"(b)   Through direct personal interview, determine the extent of the need of each such eligible person for relocation assistance;

"(c)   Provide current and continuing information on the availability, prices, and rentals of comparable sales and rental housing, and of comparable commercial properties and locations;

. . . .

"(e)   Assist any such eligible person displaced from his business or farm operation in obtaining and becoming established in a suitable replacement location;

"(f)   Supply to such eligible persons information concerning Federal and State housing programs, disaster loan and other programs administered by the Small Business Administration, and other Federal or State programs, offering assistance to displaced persons." 24 C.F.R. §42.115.

3.   Specifically, the following colloquy between appellant's counsel and the relocation specialist appears in the notes of testimony:

"Q.   Do you keep a current and continuing information on the availability of prices and rentals of commercial properties and locations for displaced businesses?

"A.   We have a list available, a multiple listing.

"Q.   How do you get that?

"A.   We invite the cooperation of real estate brokers in the City of Philadelphia.

The testimony of the relocation specialist was given in response to a question whether the Authority kept current information of rental properties available to displacees. It was not given in response to a question regarding the *extent* of relocation services provided by the Authority. Consequently, the testimony does not support appellant's contention. Moreover, a careful review of the record fails to disclose any other evidentiary support. Accordingly, appellant's first argument must fail.

Second, appellant contends that even if the Authority's relocation program complies with the Relocation Act, it was not properly administered in the instant case.[4] The court below denied this contention, finding that the Authority was "ready, willing and able" to provide appellant relocation assistance but that appellant never attempted

---

"Q. Well, do you receive their cooperation or do you just invite it?

"A. We receive it, yes.

"Q. What did you do with respect to 12th and Locust Street garage?

"A. I left my card there a half dozen times and I received no calls from any of the principals.

"Q. Had they called you, what would you have told them?

"A. I would have assisted them in any way that they wanted me to.

"Q. What did you have available to assist them?

"A. I do not know at this time."

4. Appellant asserts that the Authority failed to administer its relocation assistance advisory program vis-a-vis appellant as required by the following language in the regulations:

"State agencies shall develop and implement a relocation assistance advisory program which satisfies the requirements of §42.115.... Such programs shall be administered so as to provide advisory services which offer maximum assistance to minimize the hardship of displacement and to assure that... (b) all persons displaced from their places of business or farm operations are assisted in reestablishing with a minimum of delay and loss of earnings." 24 C.F.R. §42.105.

to act on the Authority's offer and had been frustrated. Specifically, the court relied on the following language contained in the April 9, 1974 "NOTICE TO VACATE":

"The Redevelopment Authority personnel will continue to confer with you in an attempt to assist you in finding a new location to carry on your activities. We shall continue to provide this service to you and our relocation specialist can be reached at the *Redevelopment Authority* Office, Penn Square Building, Suite 500, 1317 Filbert Street, Telephone 665-9880.

"We will continue to provide this service for your convenience and assistance, but it is your responsibility to remove from these premises in accordance with this notice."

Again, we are constrained to agree with the lower court. The language quoted above indicates that the Authority made a realistic effort, under the circumstances in this case,[5] to offer relocation assistance to appellant, a commercial corporate tenant. The record, however, contains no evidence whatsoever that appellant attempted to avail itself of this offer. Therefore, appellant cannot now complain that it failed to receive assistance from the Authority. Accordingly, appellant's second argument must also fail.

Finally, appellant contends that the Authority, as a governmental landlord, may not, consistent with due process of law, exercise its right to terminate the landlord-tenant relationship with appellant and remove the

---

5. It appears in the record that appellant's counsel, in February, 1969, informed the Authority's relocation specialist that appellant did not require relocation assistance. It also appears that the relocation specialist personally visited the premises on various occasions during the years 1970, 1972, 1973, and 1974 to meet with the officers of appellant regarding assistance. On each occasion, the specialist found the officers absent and left his business card with garage employees. However, the officers never contacted the specialist.

latter from the Locust Street premises without first demonstrating good cause.[6] It is undisputed that the purpose of the Authority in seeking possession of the property is to demolish the building thereon in order to attract potential developers by improving the visual appearance of the property and others nearby—in short, to increase the marketability of the properties. Appellant asserts that this purpose does not constitute good cause and that any writ of possession grounded thereon results in an arbitrary and capricious deprivation of its property contrary to due process.[7] We cannot agree.

Increasing the marketability of the Locust Street and nearby properties promotes the larger purpose of eliminating and redeveloping a blighted area in which these properties lie.[8] This larger purpose, as emphasized by the court below, has been recognized by our Supreme Court as a legitimate public concern. *Belovsky v. Redevelopment*

---

6. For this proposition, appellant relies primarily on *McQueen v. Druker*, 317 F. Supp. 1122 (D. Mass. 1970), *aff'd on other grounds*, 438 F.2d 781 (1st Cir. 1971). In that case, the court held that due process required good cause, beyond the mere expiration of a lease, be established before a tenant of a public housing development could be evicted. The court emphasized that the policy considerations underlying public housing—the security of a decent, sanitary home and suitable living environment—dictated this conclusion.

In the instant case, we are not dealing with public housing and its attendant policies, but with a commercial lease and a corporate tenant. Therefore, we doubt whether good cause must be shown. However, since good cause is present, we need not decide this issue.

7. The record discloses that there is no developer presently interested in the Locust Street property. Consequently, appellant asserts that the Authority has no use for the property to justify the writ.

8. The properties are contained in the Washington Square Redevelopment Area, Washington Square West Urban Renewal Area No. 2.

*Authority,* 357 Pa. 329, 54 A.2d 277 (1947). Therefore, any action reasonably related to this purpose—which we find to be the case here—is sufficient cause to allow a governmental landlord to assert an existing right to terminate a landlord-tenant relationship and to remove the tenant without violating due process. Accordingly, appellant's final argument must likewise fail.[9]

Affirmed.

Judge KRAMER did not participate in the decision in this case.

---

9. Appellant also argues that since it has entered into a post-condemnation landlord-tenant relationship with the Authority, it is no longer a "condemnee." Therefore, appellant contends that a writ of possession under Section 407(a) of the Eminent Domain Code, 26 P.S. §1-407(a), is not the proper vehicle to recover possession of the Locust Street premises. This issue, however, was not raised by appellant below and is, thus, not properly before this Court for disposition.